THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Case No. _____

CHRISTOPHER SADOWSKI,

    Plaintiff,

v.

DOWNING AND DOWNING, INC d/b/a
THE D&D DAILY,

    Defendant.

## COMPLAINT

Plaintiff Christopher Sadowski ("Plaintiff") sues Downing and Downing Inc, d/b/a The D&D Daily ("Defendant"), and alleges as follows:

## THE PARTIES

1. Plaintiff is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey.

2. Defendant is a corporation organized and existing under the laws of the State of Ohio with its principal place of business located at 36615 Vine St., Suite 103, Willoughby, OH 44094. Defendant's agent for service of process is Jacqueline Downing, 7594 Canterwood Trail, Concord, OH 44060.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant because it has maintained sufficient minimum contacts with this State such that the exercise of personal jurisdiction over it

would not offend traditional notions of fair play and substantial justice.

5. Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendant or its agents reside or may be found in this district. "[A]n individual defendant 'may be found' in any federal district in which he or she is subject to personal jurisdiction." J4 Promotions, Inc. v. Splash Dogs, LLC, No. 08 CV 977, 2009 U.S. Dist. LEXIS 11023, at *79 (N.D. Ohio Feb. 13, 2009). In other words, venue is proper in his District because Defendant is subject to personal jurisdiction in this District. See Big Guy's Pinball, LLC v. Lipham, No. 14-CV-14185, 2015 U.S. Dist. LEXIS 89512, at *2 (E.D. Mich. July 10, 2015).

**FACTS**

**I.     Plaintiff's Business and History**

6. Plaintiff is an award-winning photojournalist and is widely published in some of the world's most important newspapers and magazines, including but not limited to, the New York Post, Daily Mail Online, Reader's Digest, USA Today, New York Times, Fox News, CBS News, NBC News, Boston Globe, Boston Herald, Los Angeles Times, Newsweek Magazine, and People Magazine.

7. Throughout his career, Plaintiff has been self-employed as a professional photographer who specializes in photo-documenting ordinary life and the human condition.

8. Plaintiff travels throughout the New York, New Jersey and Connecticut tri-state area taking photographs that tell a story about tragedy, hope, calamity, joy, discord and renewal.

9. Using state-of-the-art equipment, Plaintiff creates high-end photography licensed by some of the top publishers in this Country. When commissioned for a job, Plaintiff spends countless hours capturing hundreds of photographs and then processing those photographs to ensure they meet customers' requirements.

10. Plaintiff maintains a commercial website (http://www.csnyphoto.com) which describes the photography services offered by Plaintiff, hosts a sample portfolio of photographs taken by Plaintiff, and invites prospective customers to contact Plaintiff to arrange for a professional photo shoot.

11. Plaintiff owns the photographs and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, one-time license for use of any particular photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that his customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

**II.     The Work at Issue in this Lawsuit**

*A.  The First Photograph*

12. In 2022, Plaintiff created a professional photograph of an NYPD vehicle behind barricade tape titled "102122shooting1CS" (the "First Photograph"). A copy of the First Photograph is displayed below:



13. The First Photograph was registered by Plaintiff with the Register of Copyrights on December 31, 2022, and was assigned Registration No. VA 2-334-676. A true and correct copy of the Certification of Registration pertaining to the First Photograph is attached hereto as **Exhibit "A."**

14. The First Photograph was licensed to the *New York Post* and published alongside an article titled "25-year-old man shot in the stomach in East Village." The foregoing New York Post article (immediately below the First Photograph appearing in the article) credits Plaintiff as the author/creator of the First Photograph – an attribution known in the industry as a "gutter credit":

4



METRO

# 25-year-old man shot in stomach in East Village

By Katherine Donlevy

October 22, 2022 | 5:03am | Updated

A 25-year-old man was shot in the East village Friday evening.

Christopher Sadowski

WHAT TO SHOP NOW

Need a last-minute Valentine's Day gift? Cash in with the 55 best gift cards

Nordstrom's Winter Sale is here: save up to 60% on clothes for women, men, kids, home, and more

Want to see Dave Grohl and Foo Fighters live in 2023? Here's how you can

Amazon just slashed the price of this 15-piece knife set over 60%

All the best merch available to celebrate the Chiefs Super Bowl win: hats, jerseys, more

### *B. The Second Photograph*

15. In 2018, Plaintiff created a professional photograph Lord & Taylor Building in New York titled "092818lordandtaylor23CS" (the "<u>Second Photograph</u>"). A copy of the Second Photograph is displayed below:



16. The Second Photograph was registered by Plaintiff with the Register of Copyrights on September 30, 2018, and was assigned Registration No. VA 2-125-568. A true and correct copy of the Certification of Registration pertaining to the Second Photograph is attached hereto as **Exhibit "B."**

17. The Second Photograph was licensed to the *New York Post* and published alongside an article titled "This is the beginning of the end for Lord & Taylor's flagship store." The foregoing New York Post article (immediately below the Second Photograph appearing in the article) credits Plaintiff as the author/creator of the Second Photograph – an attribution known in the industry as a "gutter credit":



18. The First Photograph and Second Photograph are collectively referred to herein as the "Work."

19. Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

III. **Defendant's Unlawful Activities**

20. Defendant is a digital news source targeting the retail industry with a focus on retail trends, loss prevention, asset protection, and IT Security.

21. Defendant advertises/markets its business through its website (https://www.d-ddaily.net/), social media (e.g., https://www.facebook.com/DandDDaily/ and

7

https://twitter.com/DandDDaily), and other forms of advertising.

22. On December 6, 2022 (within three months between first publication and the above-referenced copyright registration of the First Photograph), Defendant displayed and/or published the First Photograph on its website, webpage, and/or social media (at http://d-ddaily.com/archivesdaily/D&DDaily12-06-22.htm):





(https://twitter.com/DandDDaily/status/1600185375116251137):



(https://www.facebook.com/photo/?fbid=540486508090922&set=a.468009255338648):



23. On October 2, 2018 (after the above-referenced copyright registration of the Second Photograph), Defendant displayed and/or published the Second Photograph on its website, webpage, and/or social media (at http://www.d-ddaily.com/archivesdaily/D&DDaily10-02-18.htm):

D&D Daily e-Newsletter
http://www.d-ddaily.com/archivesdaily/D&DDaily10-02-18.htm

http://www.d-ddaily.com/archivesdaily/D&DDaily10-02-18.htm

...e Cherokee Nation filed suit in its tribal court **accusing the ... opioid addiction among tribal members**. At the heart of the fight is the tribe's allegations that the companies allowed opioids to be diverted to unauthorized users and to the black market. law360.com

**This is the beginning of the end for Lord & Taylor's flagship store**
**Host of the D&D Daily's 'Live in NYC' 2018 LPNN Shoot**

The upscale retailer's 104-year-old flagship store at 424 Fifth Ave. - **New York City's oldest** - is set to launch a final "store closing" sale on Thursday that will hawk deals on fashions and accessories throughout the holidays before the store shuts down for good.

The Grand Dame of Big Apple department stores, with its six huge sidewalk windows between 38th and 39th streets, had been perennially decked out during the Christmas season with spectacular displays for shoppers and tourists. This year, however, the storefront will be limited to just two holiday-decorated windows. They will celebrate the Lord & Taylor brand and say "Thank You" to New York for the decades of loyal business, the company said.

In an unusual move, Lord & Taylor's Canada-based owner Hudson's Bay Co., which also owns Saks Fifth Avenue, is keeping Lord & Taylor's 45 other locations open, even as it closes the historic flagship. nypost.com

- **Read our article on the history and story behind Lord & Taylor's flagship store here**.

- **Read about our 'Live in NYC 2018 at the NRF Big Show' event here**.

**The Most Productive Time for Meetings: Before Lunch**
To get the most out of your meetings, schedule them while minds are fresh and moods are up - and ahead of the afternoon slump.

You know the dreaded midafternoon slump: that loss of energy that no amount of caffeine can fix. Do you keep it in mind when you book time on your - and your colleagues' - calendar?

Rule of thumb: For maximum productivity, schedule meetings and calls before lunch. associationsnow.com

Captured by FireShot Pro: 07 February 2024, 16:18:33

24. A true and correct copy of the screenshots of Defendant's website, webpage, and/or social media displaying the copyrighted Work, is attached hereto as **Exhibit "C."**

25. In publishing the Work online, Defendant cropped the Work so as to remove Plaintiff's gutter credit. The remaining details of the photographs, however, unequivocally show the photographs to be the same.

26. Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with Defendant's website, webpage, and/or social media – even though the Work that was copied is clearly

professional photography that would put Defendant on notice that the Work was not intended for public use.

27. Defendant utilized the Work for commercial use.

28. Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

29. Through his ongoing diligent efforts to identify unauthorized use of his photographs, Plaintiff discovered Defendant's unauthorized use/display of the First Photograph in February 2023 and the Second Photograph in March 202. Following Plaintiff's discovery, Plaintiff notified Defendant in writing of such unauthorized use. To date, Plaintiff has been unable to negotiate a reasonable license for the past infringement of the Work.

30. All conditions precedent to this action have been performed or have been waived.

## COUNT I – COPYRIGHT INFRINGEMENT

31. Plaintiff re-alleges and incorporates paragraphs 1 through 30 as set forth above.

32. Each photograph comprising the Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 et seq.).

33. Plaintiff owns a valid copyright in each photograph comprising the Work, having registered the Work with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim(s) herein.

34. As a result of Plaintiff's reproduction, distribution, and public display of the Work, Defendant had access to the Work prior to its own reproduction, distribution, and public display

of the Work on its website, webpage, and/or social media.

35. Defendant reproduced, distributed, and/or publicly displayed the Work without authorization from Plaintiff.

36. By its actions, Defendant infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501. Defendant's infringement was either direct, vicarious, and/or contributory.

37. Defendant's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, Defendant itself utilizes a copyright disclaimer on its website ("© 2005-2025 Downing & Downing, Inc. ~ All Rights Reserved Globally"), indicating that Defendant understands the importance of copyright protection/intellectual property rights and is actually representing that it owns each of the photographs published on its websites. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). Defendant clearly understands that professional photography such as the Work is

12

generally paid for and cannot simply be copied from the internet.

38. Plaintiff has been damaged as a direct and proximate result of Defendant's infringement.

39. Plaintiff is entitled to recover his actual damages resulting from Defendant's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of Defendant's profits from infringement of the Work, which amounts shall be proven at trial.

40. Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

41. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover his costs and attorneys' fees as a result of Defendant's conduct.

42. Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. A declaration that Defendant has infringed Plaintiff's copyrights in the Work;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each photograph comprising the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

## COUNT II – REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

43. Plaintiff re-alleges and incorporates paragraphs 1 through 30 as set forth above.

44. As evidenced above, Plaintiff's name appeared in a gutter credit near each photograph comprising the Work identifying Plaintiff as the owner/creator of the Work. The gutter credit qualifies as protectable copyright management information identifying Plaintiff as the owner/creator of the Work.

45. Defendant knowingly and with the intent to enable or facilitate copyright infringement, removed or altered the copyright management information from the Work in violation of 17 U.S.C. § 1202(b).

46. Defendant committed these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the Work.

47. If Defendant did not remove or alter the copyright management information itself, Defendant caused, directed, and authorized others to commit these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the Work.

48. As a direct and proximate result of Defendant's conduct in removing or altering the foregoing copyright management information, Plaintiff has been damaged.

49. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b), Plaintiff is entitled to a permanent injunction prohibiting any further violation of 17 U.S.C. § 1202 by Defendant.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

a. A declaration that Defendant has violated Plaintiff's copyrights in the Work by removing or altering or causing to be removed or altered Plaintiff's copyright management information displayed thereon;

b. A declaration that such violation is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $25,000.00 for each photograph comprising the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5);

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, from directly or indirectly further violating Plaintiff's copyrights by further displaying or distributing the Work with its copyright management information removed; and

g. For such other relief as the Court deems just and proper.

### Demand For Jury Trial

Plaintiff demands a trial by jury on all issued so triable.

| | |
|---|---|
| Dated: February 15, 2024. | Respectfully submitted,<br>*/s/ Jessica A Barwell*<br>**WESP BARWELL, L.L.C.**<br>Jessica A. Barwell (0088716)<br>Gregory P. Barwell (0070545)<br>Attorneys at Law<br>475 Metro Place S. Ste 430<br>Dublin, Ohio 43017<br>P+F: (614) 456-0488<br>Email: jbarwell@wesplaw.com<br>Email: gbarwell@wesplaw.com<br>*Attorneys for Plaintiff* |